UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | | |
|---|---|---|
| RONALD BURLIE THOMAS | § | |
| | § | |
| vs | § | FILE NO.: 4:17cv522-BSM |
| | § | |
| BORG-WARNER MORSE TEC LLC, | § | |
| et al | § | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY DEFENDANT, NATIONAL AUTOMOTIVE PARTS ASSOCIATION**

To the Honorable United States District Court:

National Automotive Parts Association ("NAPA") submits this brief in support of its motion for summary judgment for the Court to make the following determinations as a matter of law:

### I.  Plaintiff's Claims Against NAPA

Plaintiff sues NAPA alleging that "NAPA, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos containing products, materials, or equipment, including, but not limited to, automotive and friction products." (Doc. 173, p. 6 / ¶ 14.)  Plaintiff further alleges that "NAPA, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently."  *Id*.  Plaintiff asserts four causes of action against NAPA: negligent failure to warn / defective design; breach of implied warranty; gross negligence / willful, wanton, and reckless conduct; and failure to warn.  (*Id*., pp. 8-17 / ¶¶ 26 - 67.)

These causes of action fail as a matter of law. As its corporate name signals, National Automotive Parts *Association* is a trade association, and neither manufactures, sells, nor distributes <u>any</u> products, let alone asbestos products. A take-nothing summary judgment in favor of NAPA on Plaintiff's claims is therefore proper.

## II.  Standard of Review

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a

genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Nat'l Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.,* 165 F.3d 602, 610 (8th Cir. 1999). The nonmoving party "must come forward with sufficient evidence to support their claims and cannot stand on their complaint and unfounded speculation." *Id*. (internal citations omitted).

### III.  Relevant Facts

In compliance with Local Rules 7.2 and 56.1, NAPA presents the following statement of relevant or material facts supported by summary judgment evidence.

All citations below reference page/line deposition excerpts of NAPA corporate representative Gaylord Spencer, attached as Exhibit A to NAPA's motion for summary judgment.

1. NAPA is a non-profit membership corporation formed in Michigan in 1925, currently employing only thirteen people. [Exh. A:  14/23 - 15/1; 18/10-12; 35/9-12.]

2. Since NAPA was formed, it has had a number of members, including Genuine Parts Company, NAPA Hawaii, Quaker City Motor Parts, Davis & Willmar, and Britten Brothers. [Exh. A:  15/25 - 16/3; 57/1-8.]

3. As a member association or trade association, NAPA provides marketing programs and advertising platforms and services to member companies for NAPA-brand recognition.  NAPA

licenses its logo for suppliers' use and provides point of purchase sales signage. [Exh. A: 28/2-5, 9-15; 53/22 - 54/8; 55/8-15; 61/19-20; 61/22 - 62/11.]

4. NAPA does not manufacture, sell, or distribute any products. [Exh. A: 14/5-8.]

5. NAPA-branded products in NAPA promotional literature are not made by NAPA. [Exh. A: 54/9-14, 16-17; 54/25.]

6. NAPA has never owned any distribution center. [Exh. A: 18/1–7.]

7. Since NAPA is not in the product distribution chain, NAPA had no role in providing any information about potential hazards associated with asbestos. [Exh. A: 59/3-9, 11-14.]

8. Currently, Genuine Parts Company, the only member of NAPA, owns fifty-seven NAPA-branded distribution centers which are involved in moving products from point of manufacture to point of end use. These distribution centers are staffed by Genuine Parts employees, not NAPA employees. [Exh. A: 15/16-19; 18/1-3, 8-9; 30/6-10; 46/12-25.]

### IV. Application of Law to Facts

Under Arkansas law, the plaintiff's allegations against NAPA — regardless of theory of recovery — are product liability actions. *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1092 (8th Cir. 2013). Plaintiff must show that a product manufactured or distributed by NAPA caused the alleged injuries. *Id.*, citing *Chavers v. Gen. Motors Corp.*, 349 Ark. 550, 79 S.W.3d 361, 369-70 (Ark. 2002); *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1303 (8th Cir. 1993).[1]

---

[1] Arkansas Model Jury Instructions also reflect that a plaintiff must prove the defendant either made or sold the product at issue. *See*, *e.g.*, Ark. Model Jury Instr. 1001 (manufacturer must use ordinary care in selecting materials, assembling, packaging, and testing its product); AMI 1002 (manufacturer must warn of dangers of a product it makes); AMI 1003 (manufacturer must instruct on use of product it makes); AMI 1004 (vendor "puts out" as its own a product manufactured by another); AMI 1005 (vendor must warn of dangers of a product it sells); AMI 1006 (vendor must inspect for defects a product it sells); AMI 1008 (for strict liability, defendant must supply the product); AMI 1010 (for breach of implied warranty of merchantability, defendant must sell a product); AMI 1011 (for breach of implied warranty of fitness, defendant must contract with the buyer).

In a products liability case, the law defines a "manufacturer" to mean "the designer, fabricator, producer, compounder, processor, or assembler of any product or its component parts". Ark. Code Ann. § 16-116-202(3). The law defines "product" to mean "any tangible object or goods produced, excluding real estate and improvements located thereon." *Id.*, § 16-116-202(4). A "supplier" means "any ... entity engaged in the business of selling a product, whether the sale is for resale or for use or consumption", including "a retailer, wholesaler, or distributor ...." *Id.*, § 16-116-202(6)(A), (6)(B). To hold a supplier of a product liable in damages for harm to a person, the plaintiff's claim requires proof that "[t]he supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product" and that the product was, in fact, supplied by the entity. *Id.*, § 16-116-101(a)(1), (a)(2).

The Eighth Circuit analyzed this basic requirement in Arkansas law — that the defendant being sued actually manufactured or distributed the product in question — in *Bell v. Pfizer, Inc.*, when a plaintiff, Bell, sued the manufacturers of a brand-name drug although she only ingested a competitor's generic drug and, thereafter, developed a neurological disorder from such ingestion. 716 F.3d at 1090. Reviewing a summary judgment in favor of the "brand defendants", the Eighth Circuit applied its reasoning in an earlier decision applying Minnesota law that brand name manufacturers did not owe a duty of care to users of their competitor's generic products,[2] and held that Arkansas law compelled the same result. *Id*. at 1092. Since Bell never used anything made or sold by the manufacturers she sued, her claims against those manufacturers failed as a matter of law. *Id*. at 1094.

---

[2] *Mensing v. Wyeth, Inc.*, 588 F.3d 603, 612-14 (8th Cir. 2009), rev'd in part on other grounds sub nom. *Pliva, Inc. v. Mensing*, 564 U.S. 604, 131 S. Ct. 2567, 180 L. Ed. 2d 580 (2011).

Other courts have reached the same conclusion: no authority to impose liability against a defendant in circumstances where the defendant neither manufactures nor distributes the product at issue. In a case specifically dealing with NAPA's corporate function as a trade association, the United States District Court for the Northern District of Mississippi considered a personal injury claim caused by an exploding vehicle battery marketed as a "NAPA 7000 series battery" and purchased from a parts house that was a member of National Automotive Parts Association. *Harmon v. Nat'l Auto. Parts Ass'n*, 720 F. Supp. 79 (N.D. Miss. 1989). The district court granted summary judgment to NAPA when it was shown that NAPA was a membership organization, providing marketing and consulting services to its members, and licensing its NAPA trademark to several member organizations engaged in the manufacture and marketing of parts under the NAPA label. *Id*. at 80. The court concluded that there was no authority to impose strict liability on NAPA in those circumstances where it was not shown to have been engaged in either the manufacture or distribution of the product. *Id*.

Following *Harmon*, a Mississippi state court determined that a trade association's compensation for the use of a brand did not compel a different outcome. *Harrison v. B.F. Goodrich Co.*, 881 So. 2d 288, 291-92 (Miss. App. 2004). In *Harrison*, notwithstanding a fee paid to Goodrich for use of its "Goodrich" brand, the summary judgment rendered for Goodrich properly rested on the material fact of the company neither producing nor selling any product:

> "The core fact that Goodrich was not directly involved in the manufacture or distribution of the allegedly faulty tire remains unchanged, and products liability law limits itself to imposing liability on entities engaged in the actual production or sale of goods."

*Id*. Accord, *Bay Summit Cmty. Ass'n v. Shell Oil Co.*, 51 Cal. App. 4th 762, 775-76, 59 Cal. Rptr. 2d 322, 330 (1996) (the mere fact an entity promotes, endorses, or advertises a product does not automatically render that entity strictly liable for a defect in the product; "[i]t would be unlikely

that such defendant could significantly affect product safety or that the defendant could effectively spread the risk of the cost of protection."); *Evenson v. Osmose Wood Preserving, Inc.*, 760 F. Supp. 1345, 1349 (S.D. Ind. 1990) (defendant trade association, which did not manufacture, sell, distribute, design, test, conduct safety research on, or set standards for the product, could not be held to have owed a duty to the plaintiff).

The summary judgment evidence establishes as a matter of law that NAPA, a trade association, is neither a "manufacturer" nor a "supplier" of a product allegedly used by Plaintiff's decedent. Rather, NAPA provides marketing and advertising for brand recognition. It neither owns nor staffs any product distribution centers. Licensing of the NAPA logo does not constitute manufacturing or selling an asbestos-containing product. Since NAPA neither manufactured nor sold anything at issue in this case, NAPA owes no duty to Plaintiff, and NAPA cannot be held liable under Arkansas law. *See Bell v. Pfizer, Inc.*, 716 F.3d at 1092-94.

WHEREFORE, PREMISES CONSIDERED, National Automotive Parts Association prays that the Court grant its motion for summary judgment, and render summary judgment in favor of NAPA as prayed for in the motion.

    Respectfully submitted,

    /s/ *J. Dennis Chambers*
    **J. Dennis Chambers**
    Arkansas Bar No. 80025
    dchambers@arwhlaw.com
    Brandon Cogburn
    Arkansas Bar No. 02094
    bcogburn@arwhlaw.com
    **Atchley, Russell, Waldrop & Hlavinka, L.L.P.**
    1710 Moores Lane
    Texarkana, TX 75503
    Tel 903-792-8246
    Fax 903-792-5801
    **Attorneys for Defendant,**
    **National Automotive Parts Association**

## Certificate of Service

I hereby certify that on this 30th day of August, 2018, a true and correct copy of the above and foregoing document has been served via ECF filing to the following:

George R. Wise, Jr.
gwise@bradhendricks.com

Ben Braly
bbraly@dobllp.com

All known defense counsel

      /s/ *J. Dennis Chambers*
**J. Dennis Chambers**